STATE OF MAINE *vs.* ISAIAH CHADBOURNE.

York.      Opinion, February 18, 1933.

**6**

*Ralph W. Hawkes*, County Attorney for the State.
*Mathews & Varney*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

PATTANGALL, C. J.   On exceptions to refusal of the presiding Justice to direct a verdict of "not guilty." Respondent was charged with a violation of Sec. 7, Chap. 199, P. L. 1931, which reads, "All packages used in the shipment and transportation of clams from town to town and from a place within the state to a place without the state shall bear a label which in plain and distinct letters and figures shall state the name and license number of the consignor and the name of the consignee, the word 'clams,' the date of shipment, and the name of the town in which the clams were dug."

It was stipulated that respondent transported clams from town to town in bags which were not fastened at the top, that no labels were affixed to the bags but that a tag was placed inside of each upon which was written all of the information required by the statute—which respondent contended satisfied the requirements of the law. It also appeared that respondent was duly licensed to buy and sell clams and transport them from place to place in Maine.

The particular act upon which the complaint against him was based consisted of his having delivered by truck to a customer in a neighboring town six bushels of clams in open bags, unlabelled except as stated in the stipulation. The sole issue is whether or not, under the circumstances of the case and on the agreed facts, he violated the provisions of the section above quoted.

Reference to Chap. 199, P. L. 1931, discloses its purpose to be the prevention of the sale of clams taken from contaminated areas. The requirements as to licensing dealers and labelling packages were designed to aid in consummating that purpose. The label was especially important. From it could be ascertained the place where the clams were dug, which was the vital fact to be determined if the law was to be of benefit to the public.

Taken literally, Section 7 would not apply to the case at bar. It apparently refers to closed packages. The word "clams" was to

appear on the label. Quite obviously this would be superfluous if the package were open.

It is also clear that the language of Section 7 is not strictly applicable to personal deliveries by vendor to vendees. We do not speak of a direct delivery by a seller of goods to a buyer as a "shipment," nor do we designate the parties to such a transaction as "consignor" and "consignee." These terms imply something quite different than appears in the case before us.

"Shipment" is defined by Webster as "Act or process of shipping; act or process of dispatching goods by vessel or other means of transportation; delivery of goods to a carrier for transportation." It is defined in 6 Words and Phrases (3rd Series) 1088 as a "complete delivery of goods by shipper to carrier. Transportation and shipment is not made until shipper has parted with all control over goods and nothing remains to be done by him to complete delivery."

Webster defines "consignee" as one to whom something is consigned or shipped; and "consignor" as one who consigns something — correlative to "consignee." "A consignee is one to whom something is consigned or shipped." 2 Words and Phrases (3rd Series) 344. "A consignor is a person who delivers freight to a carrier, or a shipper of merchandise or a vendor who ships goods." 2 Words and Phrases (1st Series) 1449-50.

There is no "shipment" here. There may be "transportation" but not "shipment and transportation." The words appear conjunctively in the statute and taken together carry a much broader implication than does the word "transportation" alone. There is no consignment, no consignor, no consignee. There is no closed package. There is a delivery of an open receptacle by a seller to a purchaser.

We think, however, that this would not excuse failure to label; and there was no such failure. The real object of the law must be kept in mind; namely, to convey to purchasers and wardens information from which could be determined whether or not the clams came from contaminated areas.

Under the circumstances shown here, the method of labelling adopted by respondent was sufficient. The label was filled out in accordance with law. It contained all of the information required.

The only complaint is that it was inside instead of outside the open bags in which the clams were carried.

The purpose and intent of the statute were carried out. Respondent's motion should have been granted.

*Exceptions sustained.*